**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**


**DERRICK CHARLESTON,**

      **Petitioner,**

**vs.**                              **Case No. 4:07cv260-SPM/WCS**

**JAMES McDONOUGH,**

      **Respondent.**

_____/


## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

This cause is before the court for ruling on Petitioner Derrick Charleston's second amended petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Doc. 41. Petitioner challenges the judgment of the Second Judicial Circuit, Gadsden County, case number 00-128CFA. He was charged with sexual battery on A.C., a child under the age of twelve,[1] occurring on or about January 1, 2000, and February 21, 2000. Ex.

---

[1] She was born on October 27, 1988 (Ex. C, pp. 54, 67), so would have been eleven years old on the date of the offense. Petitioner, born on September 4, 1980, was nineteen. Ex. C, p. 92.

A.[2]  Petitioner was found guilty by a jury.  Ex. D.  He was sentenced to life imprisonment and adjudicated a sexual predator.  Exs. F and G.  The judgment was affirmed on appeal.  Ex. K.

Respondent filed an answer (doc. 14) to the first amended petition (doc. 7), and objected to the motion to amend.  Doc. 21.  Leave to amend was granted over the objections.  Doc. 22 (incorporated herein by reference).  The second amended petition, originally submitted as an attachment to the motion to amend (doc. 17), was ultimately docketed separately by the clerk as document 41 and is listed on the electronic docket immediately following document 17.

Respondent filed an answer to the amended petition.  Doc. 42.  Petitioner filed a reply to the initial answer, addressing Respondent's arguments as to ground one.  Doc. 16 (see also doc. 16, p. 8, relying on his § 2254 petition as to the other five grounds).  He filed a reply to the second answer (*i.e.*, the answer to the second amended petition), addressing Respondent's arguments as to ground eight, and relying on the second amended petition as to grounds seven and nine.  Doc. 43.

---

[2] The second answer, doc. 42, references Exs. A-Z, which were submitted in paper form with a notice of filing with the first answer.  Doc. 15.  The answer also references Exs. AA-QQ, which were submitted in paper form when the answer was electronically filed.  Doc. 42, pp. 89-92 in ECF (electronic case filing) (index to all exhibits).  The additional Exs. AA-QQ apparently accompanied doc. 42.  There was not a separate notice of filing or docket entry when these exhibits were received by the clerk, but they were stamped received on June 12, 2009, a day after doc. 42 was docketed.  References to Exs. A-QQ are to those submitted by Respondent unless otherwise indicated.

**The Trial Evidence**

The following is a brief summary of the trial evidence taken from Petitioner's initial brief on direct appeal, Ex. I, and the trial record, Ex. C. On an afternoon in January, 2000, Dawoo Shannon, a friend of Petitioner's, was standing with Petitioner watching a group of young girls ride by on bicycles. *Id.*, p. 3. Petitioner said to Shannon, "Yeah, I had that right there." *Id.* and Ex. C, p. 41. Shannon said they were talking about having sex with these young girls. *Id.* He then told Janey Dick, A.C.'s mother, that "Man," Petitioner's nickname, "said [her daughter] got some good cat." *Id.*, p. 41. Shannon said that he and Petitioner were laughing and joking. *Id.* Shannon admitted that he told a police investigator that he was surprised by Petitioner's comment, and told Petitioner, "Man, you ain't been having sex with that girl. She's too little. She's just a baby." *Id.*

A.C.'s mother, Janey Dick, reported this to the police. *Id.* She said she had not talked with A.C. before she contacted the police. Ex. I, p. 4.

A.C. testified that Petitioner's brother told her by telephone that Petitioner wanted to meet her "down the road." Ex. I, p. 4. She did, and Petitioner invited her to join him in an abandoned house. *Id.* She said she willingly did so, removed her clothes, and had sexual intercourse with Petitioner. *Id.* She said that Petitioner did not threaten her. *Id.* A.C. said she had been sexually active before this. *Id.* On cross examination, she admitted that Petitioner's brother had not telephoned her. *Id.* She said that instead, she met Petitioner walking down the street. *Id.*

Dr. Moorer testified that A.C. was a big 12 year old (her age at the examination),[3] 66 inches tall and weighing 168 pounds, and had been menstruating for about two years. *Id.*, p. 5. Dr. Moorer found no evidence of physical trauma to indicate that A.C. had or had not been sexually active. *Id.* He said that in his opinion, 40 to 60% of the time there would be no physical evidence of sexual activity for a sexually active child of A.C.'s size and physical maturity. *Id.* He also said that small lacerations in a child from sexual penetration will heal surprisingly quickly. Ex. C, p. 107.

Petitioner's brother testified for the defense that he had not made a telephone call to A.C. for any purpose. *Id.*, p. 6. Brandon Scott testified that he had seen A.C. exit from the abandoned building with a man other than Petitioner. *Id.* Cedric Parks, age 15, said he had never seen Petitioner with A.C. and he had not seen A.C. exiting the abandoned building. *Id.*

**Section 2254 Standard of Review**

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).[4] But habeas corpus relief may be granted only if Petitioner has properly exhausted his federal claims in state court. § 2254(b)(1) and (c). To do so the federal claim be fairly presented to the state court, to give the State the opportunity to pass upon and correct alleged violations of federal rights. *See*

---

[3] The examination was done on November 30, 2000. Ex. C, p. 108.

[4] If no constitutional claims are raised, then §2254 is inapplicable and the exhaustion inquiry is irrelevant. Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct. 1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (citations omitted); Duncan v. Henry, 513 U.S. 364, 365-366, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995). While it is not necessary that the petitioner cite "book and verse" of the Constitution, the state court must be alerted to the fact that a federal constitutional claim is raised. Duncan, 513 U.S. at 365-366, 115 S.Ct. at 888 (citations omitted); *see also* McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) (holding that a petitioner must "do more than scatter some makeshift needles in the haystack of the state court record") (citations omitted).

The petitioner also "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). *See also* Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (applying this one complete round requirement to state collateral review process as well as direct appeal). If a claim is not fairly presented through one complete round of state court review and review is no longer available in state court, it is procedurally defaulted and the petitioner must demonstrate cause and prejudice for the default *or* a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).[5]

---

[5] The miscarriage of justice exception applies only to extraordinary cases, where a constitutional violation has probably resulted in conviction of an innocent person. McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991). *See also* House v. Bell, 547 U.S. 518, 536-537, 126 S.Ct. 2064, 2076-2077, 165 L.Ed.2d 1 (2006) (explaining what must be shown to demonstrate actual innocence as a "gateway" to review of a defaulted claim).

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law

compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them.").  *See also*, Carey v. Musladin, 549 U.S. 70, 74-77, 127 S.Ct. 649, 653-654, 166 L.Ed.2d 482 (2006) (§ 2254 refers to holdings, rather than *dicta*, of the Supreme Court, collecting cases to show that "[r]eflecting the lack of guidance from this Court, lower courts have diverged widely in their treatment of defendants' claims.").

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.  *See also*, Panetti v. Quarterman, 551 U.S. 930, 953-954, 127 S.Ct. 2842, 2858-2859, 168 L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams, other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in

original).  Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001).  *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler).  There are no rigid requirements or absolute duty to investigate a particular defense.  Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better.  Stacking defenses can hurt a case.  Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

*Id.*

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently.  Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852.  To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner asserts ineffective assistance of counsel for consenting to the "total closing" of the courtroom during trial. Doc. 41, p. 4. Petitioner contends he had a right to a public trial. *Id.* He claims that no findings were made to establish the need for a total closure, and that closing the courtroom was prejudicial as it gave A.C., who previously was reluctant to testify during a deposition, a sense of security. *Id.*, p. 7. He alleges that A.C.'s mother pressured her daughter into testifying, so:

> shutting the courtroom to *some of the spectators in the community that knew [A.C.], and hearing of the incident*, conferred upon her the comfort of giving an exaggerated account of the incident without her testimony being exposed to the public scrutiny. Thus, the closed courtroom created a safe-haven for mendacity without exposure to members of the community. *If counsel had objected in a timely fashion it is reasonable to believe that had the courtroom been only partially closed as [FLA. STAT. § 918.16] specifically authorizes, and Charleston's right to a public trial not been wholly deprived from Charleston*, [A.C.] would have shown the same performance once demonstrated in a previous deposition, namely, [her] inability to answer questions, reluctance, and uncooperative attitude resulted in the proceedings being halted. . . . [This] would have destroyed her credibility as a witness thereby creating a reasonable doubt in the jury's mind that Charleston is not guilty of the alleged crime because of the lack of evidence.

*Id.*, pp. 7-8 (emphasis added).

This claim raises a number of complicated issues, but fails at several levels. At the outset it is observed that this fails to state a claim of ineffectiveness with respect to an alleged failure to insist upon compliance with FLA. STAT. § 918.16(1). At the time of Petitioner's trial, FLA. STAT. § 918.16(1) provided in relevant part:

> Except as provided in subsection (2), in the trial of any case, civil or criminal, when any person under the age of 16 . . . is testifying concerning any sex offense, the court *shall* clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or

broadcasters, court reporters, and, at the request of A.C., victim or witness advocates designated by the state attorney's office.

FLA. STAT. § 918.16(1) (emphasis added). If this statute had been followed, as Petitioner asserts should have occurred, mere spectators in the community who knew A.C. or had knowledge of the incident – the very people Petitioner claims should have remained in the courtroom – would have been properly excluded. Accordingly, this fails to state any attorney error, at least with respect to compliance with the statute.

The claim, however, contains another assertion of ineffectiveness, that the failure of counsel to object denied Petitioner his right to a public trial under the federal constitution. This second claim of ineffectiveness is addressed ahead.

Respondent argues that Petitioner did not exhaust state court remedies as to these two claims of ineffective assistance of counsel because Petitioner did not claim in his Rule 3.850 motion that there had been a "total" closure of the courtroom. Doc. 42, p. 13. Respondent alleges that in his Rule 3.850, Petitioner had only objected to a partial closure, "shutting the courtroom to some of the spectators in the community that knew" A.C.. *Id.*, citing Ex. L, p. 53.

Respondent makes little argument addressing the merits. Respondent argues that the fact that the closure was "partial" pursuant to FLA. STAT. § 918.16(1), and that Petitioner's counsel consented, distinguishes this case from Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). Doc. 42, p. 18. Respondent argues that when the First District Court of Appeal "*per curium* [sic, *per curiam*[6]] affirmed" the denial

---

[6] Counsel means per curiam, which means by or through the court. Curia in Latin is court.

of Rule 3.850 relief, that was the last state court decision "rejecting the federal claim."

*Id.*

Petitioner alleged in his Rule 3.850 motion that he was deprived of the right to

effective assistance of counsel because his attorney did not object "to the closing of

movant's trial." Ex. L, p. 51. Petitioner alleged that "[t]he prosecution proposed 'that the

courtroom be cleared' to *all* persons 'not a part of this case.' " *Id.*, p. 52 (emphasis

added). Petitioner's attorney consented and the motion was granted. *Id.* Petitioner

asserted that this denied a constitutional right to a public trial because there was no

finding that the child victim "could not testify in a courtroom opened to the general

public." *Id.* To show prejudice to the outcome, Petitioner alleged:

> [S]hutting the courtroom to *some of the spectators in the community that knew [A.C.], and hearing of the incident,* conferred upon [A.C.] the comfort of giving an exaggerated account of the incident without her testimony being exposed to public scrutiny.

*Id.*, p. 53 (emphasis added). He also argued that a right to a public trial is a personal

right, and his attorney could not waive the right for him without conferring with him. *Id.*

Closing the courtroom to exclude "all persons not a part of this case" closes the

courtroom to everyone except a party, counsel, and court staff. It is a total closure. The

same claim is made before this court. The argument that Petitioner did not present the

same claim in state court because there he made reference to "some of the spectators"

is unpersuasive. Indeed, Petitioner used the same wording here. Doc. 41, pp. 7-8

(quoted *supra*). It is therefore unpersuasive to the extent it can be read as failing to

allege ineffectiveness for failing to pursue Petitioner's federal right to a public trial.[7]  This

court should address the merits of the ineffective assistance of counsel claim.  As noted

earlier, the only claim before this court is that counsel was ineffective for failing to argue

that the closure of the courtroom denied a federal constitutional right to a public trial.

Just before the child victim testified during Petitioner's trial, the prosecutor moved

to have the courtroom "cleared for anybody who's not a part of this case."  Ex. C (trial

transcript), p. 66.  Petitioner's attorney consented.  *Id.*  The trial court said:

> Ladies and gentlemen, pursuant to Florida law, because of the nature of
> the case and the witness that will testify, I'll ask everybody who's not a
> party to this case to, please, leave the courtroom during this testimony.

*Id.*  The court said further, "I believe that would include all the rest of these spectators."

*Id.*

The state court denied this claim as presented in the Rule 3.850 motion without a

hearing.  The court concluded that the closure was in obedience to FLA. STAT. §

918.16(1).  Ex. O, p. 138.  The court reasoned that since Florida law required the

closure that took place, Petitioner could not show prejudice to the outcome and his

claim of ineffective assistance of counsel fails.  *Id.*  The court said:

> While Defendant complains that there was no reason to believe the child
> victim could not testify in a court open to the general public, Defendant
> once again chooses to ignore a clear reading of the statute which does not
> require a finding that the child victim cannot testify in open court.

---

[7] Petitioner contended in his Rule 3.850 motion that his attorney was ineffective
for failing to argue that his constitutional right to a public trial was violated by the closure
of the courtroom.  Ex. L, pp. 51-52.  Petitioner argues in this court that he had a right to
a public trial, and it is the federal constitution that guarantees that right.  Doc. 41, pp. 4,
7-8.  He elaborates on his federal right to a public trial in his response.  Doc. 16, pp. 3-8.

*Id.* The Rule 3.850 court did not address whether counsel was ineffective for failing to argue that the closure violated Petitioner's federal right to a public trial.[8]

Closure of the courtroom to all persons "not a part of this case" is a significant closure to the public. Since there has been no evidentiary hearing in this court or in state court, it is assumed that this order excluded the people that Petitioner wanted to have been there, the people who knew A.C. and were familiar with the incident, but were not "a part of this case."[9] Further, since the state Rule 3.850 court did not address the federal constitutional right to a public trial, there is no state court decision as to which this court must defer.

The right to a public criminal trial is secured by the Sixth Amendment. Judd v. Haley, 250 F.3d 1308, 1314 (11th Cir. 2001). Denial of a public trial is structural error. Judd v. Haley, 250 F.3d 1308, 1314-1315 (11th Cir. 2001). Structural error is not subject to harmless error review on direct appeal. *Id.* "The mere demonstration that [a defendant's] right to a public trial was violated entitles a petitioner to relief." *Id.*

Had Petitioner's attorney objected to closure of the trial as a violation of the federal constitution, he would have presented argument as to what a trial court must do

_____

[8] This may have been due to Petitioner's failure to allege specific facts, as discussed ahead regarding an evidentiary hearing.

[9] Since the state trial court did not identify who was required to exit the courtroom, and neither did the Rule 3.850 court, it is unknown whether this closure excluded the press and Petitioner's family. Neither the press nor Petitioner's family are necessarily "a part of this case," yet people in both categories should have been permitted to stay pursuant to FLA. STAT. § 918.16(1). The court does not address this issue, however, as Petitioner has failed to state a claim for ineffective assistance of counsel premised upon a violation of that statute.

to close a criminal trial, and the trial court would have made findings. As explained in

Judd:

> [T]he party seeking to close the hearing must advance an overriding
> interest that is likely to be prejudiced, the closure must be no broader than
> necessary to protect that interest, the trial court must consider reasonable
> alternatives to closing the proceeding, and it must make findings adequate
> to support the closure.

250 F.3d at 1314, *quoting* Waller v. Georgia, 467 U.S. 39, 48, 104 S.Ct. 2210, 81

L.Ed.2d 31 (1984).

A partial closure would have presented a different issue for Petitioner's counsel

than a total closure.

> When access to the courtroom is retained by some spectators (such as
> representatives of the press or the defendant's family members), we have
> found that the impact of the closure is not as great, and not as deserving
> of such a rigorous level of constitutional scrutiny.

250 F.3d at 1315. However, both "partial and total closures burden the defendant's

constitutional rights, and before either is undertaken, a court 'must hold a hearing and

articulate specific findings.' " *Id.*, *quoting* Douglas v. Wainwright, 739 F.2d 531, 532

(11th Cir. 1984). If there is only a partial closure, the court "need merely find a

'substantial' reason for the partial closure, and need not satisfy the elements of the more

rigorous *Waller* test." 250 F.3d at 1315, *quoting* Douglas, 739 F.2d at 533. "Absent

evidence in the record as to whether the closure was partial or total, it is impossible for

a reviewing court to properly evaluate whether the closure violated the defendant's Sixth

Amendment rights." 250 F.3d at 1316.

Even though a denial of a public trial is structural error, when denial of a public trial is the basis for a claim of ineffective assistance of counsel, prejudice to the outcome must be shown:

> [T]o prevail on his ineffective assistance claim stemming from the failure of his trial counsel to raise an objection to the closing of the courtroom, [a claimant] must show a reasonable probability of a different result in the trial if counsel had objected.

Purvis v. Crosby, 451 F.3d 734 (11th Cir.), *cert. denied*, 549 U.S. 1035 (2006). *Contra*, Owens v. United States, 483 F.3d 48, 66 (1st Cir. 2007). The "outcome" is the determination of guilt, not the ruling on the objection to closure of the courtroom. "When we are considering defective performance at the guilt stage, ''the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " Purvis v. Crosby, 451 F.3d at 738, *quoting* Strickland, 466 U.S. at 695, 104 S.Ct. at 2068-2069.

In state court, "the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met." (Michael) Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 1491, 146 L.Ed.2d 435 (2000). Those "stringent requirements" are not implicated here. *See* § 2254(e)(2)(A)(i) and (ii) (requiring, as a preliminary matter, that the claim be based either on a new rule of law, or on facts not previously discoverable by due diligence).

To be entitled to an evidentiary hearing in state court on a Rule 3.850 motion, a defendant must allege specific facts:

> This Court has consistently held that to be entitled to an evidentiary hearing on a motion claiming ineffective assistance of counsel, the defendant must allege specific facts establishing both deficient performance of counsel and prejudice to the defendant.

Jones v. State, 998 So. 2d 573, 587 (Fla. 2008).[10]  The court further held that "[a]bsent allegations that the actual jurors were exposed to Jones in shackles, he cannot demonstrate prejudice" and an evidentiary hearing is not needed.  *Id.*, at 588.

In his Rule 3.850 motion, Petitioner did not identify the people excluded.  He did not specifically allege how they knew A.C., what knowledge they had of the "incident," and how their presence in the courtroom would have caused the testimony of A.C. to be less credible.  Petitioner also did not assert that his own immediate family or members of the press were excluded, which might have given rise to a claim under Fla. Stat. § 918.16(1).

---

[10] The federal rule for the sufficiency of a pleading of ineffectiveness is the same. "A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. "Conclusory allegations of ineffective assistance are insufficient."  Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (drug quantity at sentencing, failure to allege specific facts), *quoting*, United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991) (same); Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel); Bolder v. Armontrout, 921 F.2d 1359, 1363-1364 (8th Cir. 1990), *cert. denied*, 502 U.S. 850 (1991); United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir. 1990), *cert. denied*, 502 U.S. 826 (1991).

Therefore, Petitioner failed to develop the facts in state court due to the pleading insufficiencies of his Rule 3.850 motion, and his claim that counsel was ineffective for failing to argue denial of a federally guaranteed public trial arrives at this court without an adequate factual predicate. This court cannot remedy this problem with its own evidentiary hearing. Consequently, the claim fails for lack of a factual foundation to show prejudice to the outcome.

Finally, if this court had authority to conduct an evidentiary hearing, Petitioner has not shown good cause to do so. Respondent argues that there was no prejudice to the outcome, and, therefore, Petitioner cannot show cause for his procedural default. Doc. 42, pp. 19-20. Respondent argues that at the deposition of the child victim, two prosecutors, a defense attorney, and A.C.'s advocate were present. Doc. 42, p. 19. In other words, the people Petitioner argues should have been allowed to stay in the courtroom at trial were not present for this deposition. Respondent reasons:

> If the victim were having as much difficulty during depositions, as Petitioner alleges when *not* faced with "some of the spectators in the community that knew [her]", then even if the courtroom closure were "total", she still would have exhibited these same behaviors in the face of an even greater number of essential court personnel; *i.e.* the jury panel, judge, court reporter, Petitioner himself, court clerk bailiffs, *etc*.

*Id.*, pp. 19-20.

Petitioner replies that Respondent erroneously refers to the deposition of A.C. taken on May 26, 2000, and asserts that:

> The deposition that was terminated were taken [sic] on May 11, 2000, not May 26, 2000. The same spectators in the community that knew [A.C.] and knew about the incident were present at [A.C.'s] May 11, 2000 deposition.

Doc. 16, p. 7. Petitioner argues:

> An evidentiary would enable [Petitioner] to prove actual prejudice. Such a hearing would show why spectators in the community knew [A.C.] and knew about the incident was present [sic] during [A.C.'s] deposition, their intent to remain in the courtroom during [A.C.'s] testimony at Petitioner's trial, their interest in the outcome of the case, why [A.C.] would not testify in their present [sic], and why the court and counsel did not make findings adequate to support its decision to close the courtroom on the record.

*Id.*, at 7-8.

This court may not hold an evidentiary hearing. It was Petitioner's pleading deficiencies that caused the state Rule 3.850 court to not hold an evidentiary hearing as to – indeed, to not even recognize the public trial aspect of – this claim. Further, Petitioner has still not shown good cause for an evidentiary hearing. Petitioner did not present a copy of the May 11, 2000, deposition of A.C.. Petitioner has never identified the people excluded or specifically shown how their presence at trial would have damaged the credibility of A.C.. For these reasons, Petitioner has failed to allege prejudice to the outcome with sufficient specificity, and has failed to develop the facts to support prejudice based on the alleged ineffectiveness of counsel claim. Ground one should be rejected for these reasons.

**Ground Two**

Petitioner asserts that "counsel was ineffective by misinforming and misleading Charleston about the right to testify." Doc. 41, p. 4. He alleges that counsel strongly advised him not to testify, and told him he would be subject to cross examination regarding his previous relationships with young girls, specifically a 17 year old girl with whom he had had sexual relations and who had become pregnant as a result. *Id.*, pp. 8-9. Petitioner claims this advice was in error, as the scope of cross examination would be limited by the scope of direct. *Id.*, p. 9. He asserts that this bad advice rendered

involuntary his waiver of the right to testify. *Id.* He claims prejudice "because the jury based its decision to convict" on the testimony of A.C. and her mother, Janey Dick, and his testimony would have undermined the mother's credibility by establishing her motive to falsify charges and to elicit her daughter's aid in doing so. *Id.*, p. 9. It is Petitioner's contention that because of a 1996 robbery, Ms. Dick had a motive to bring false charges and to testify falsely against him. *Id.*; *see also*, pp. 10-17 (grounds three, four, and five). Respondent concedes that state court remedies were exhausted as to this claim, and addresses the merits. Doc. 42, p. 24.

"[A] criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (*en banc*, emphasis by the court). Such a claim is properly brought as an ineffective assistance of counsel claim pursuant to the Strickland formula. 953 F.2d at 1534. As a claim of ineffectiveness, however, Defendant must also show prejudice to the outcome. Nichols v. Butler, 953 F.2d 1550, 1553-1554 (11th Cir. 1992) (*en banc*).[11]

> Where counsel has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone, defense counsel "has not acted 'within the range of competence demanded of attorney's in criminal cases,' and the defendant clearly has not received reasonably effective assistance of counsel." *Teague*, 953 F.2d at 1534 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

---

[11] Nichols and Teague were decided on the same day by the *en banc* court. Nichols makes it plain that when the right to testify has allegedly been blocked by counsel, the court must consider both the cause and prejudice questions of Strickland.

Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999). A conclusory assertion that counsel did not allow a defendant to testify, without particular factual allegations as to both attorney error and prejudice to the outcome, is insufficient to warrant an evidentiary hearing. Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991); Siciliano v. Rose, 834 F.2d 29, 30-31 (1st Cir. 1987); United States v. Martinez, 181 F.3d 627, 628-629 (5th Cir. 1999) (remanding to permit a defendant to augment conclusory allegations with specifics).

This claim, as other grounds addressed ahead, is based in part on the deposition of Janey Dick. At her deposition on May 11, 2000, Janey Dick said that she knew Petitioner prior to the "situation" with her daughter. Ex. L, p. 86. Petitioner is her oldest daughter's cousin. *Id.* Asked if she or other family members "had any particular difficulties" with Petitioner prior to this, she said "[y]es," that "he robbed me one time when I run the pool hall in Gretna." *Id.*, pp. 86-87. She said this happened in 1996. *Id.* Charges were filed and Petitioner was "convicted."[12] *Id.* When asked if she was "probably a little wary of him given the earlier incident, but you have no personal grudge as such out of that?" she answered, "[n]o, we've been tight friends ever since." *Id.*, p. 87.

At trial on October 5, 2001, Janey Dick testified that she had lived in Gretna all her life. Ex. C, p. 53. She said in January, 2000, when the first sexual assault was committed, she had known Petitioner for years, that he was from Gretna, had family in Gretna, and she and Petitioner were "friends." Ex. C, pp. 54-55. She said that Dawoo

---

[12] Given Petitioner's age, this was probably a juvenile adjudication.

Shannon "just came up and told me what had happened." *Id.*, p. 56. She said there

was no bad blood between her and Petitioner, they got along, and had no reason to get

Petitioner in trouble except for the information provided to her by Shannon. *Id.*, pp. 60-

61.

In state court, Petitioner asserted that counsel was ineffective for advising him

not to testify because his relationships, specifically with the 17 year old girl, would be

brought out on cross examination. Ex. L, pp. 38-39 (claim 2E). He claimed waiver of

this right was not knowing and voluntary. *Id.*, p. 40. He claimed that counsel's error

prejudiced him as follows:

> Had movant testified, he would have informed the trial jury that he did not
> have sex with [A.C..]. That [A.C.] told movant that she was 14 years old,
> not 11 as she stated. That movant was going to have sex with her, but
> before the act was consummated, there was noise outside the abandoned
> apartment where they were, and the effort stopped because [she] got
> frightened. They left the apartment with no sex act ever happening, only
> kissing and touching. Movant would have further testified that Ms. Dick
> harbored hatred for Movant having robbed and battered her, had vowed
> never to forget it, and declared her intention to get Movant if that the last
> she do [sic]. That he and Ms. Dick never got along after the robbery.

*Id.*, pp. 40-41. In his affidavit, App. N to the Rule 3.850 motion, Petitioner claimed that

he robbed and battered Dick, who was angry that he was never charged and

punished,[13] and vowed to him and others to get him. *Id.*, p. 160-161

Petitioner argued to the state court that testimony that A.C. lied to him about her

age "would have conclusively negated the age element" of capital sexual battery. *Id.*, p.

41. He claimed if the jury heard that the sex act never happened because A.C. was

---

[13] This is contrary to Petitioner's assertion that he was charged and convicted for
that robbery, as the claim raised in ground three of the § 2254 petition (addressed
ahead).

frightened by a noise, the jury would only have found him guilty of the lesser offense of attempt, or of lewd and lascivious assault. *Id.*

The state court rejected claim 2E. Ex. O, p.137. The court noted that Petitioner had conceded on the record at trial that he was aware of his right to testify and had told the court he was satisfied with his decision to remain silent. Ex. O, p. 137, referencing the transcript (Ex. C in this file) at p. 186, which supports this finding. The court said:

> Defendant now argues had he taken the stand he would have basically confessed to an attempted lewd battery on a child under 16 years of age. Such testimony would have corroborated the testimony of the child victim in all respects except the completion of the sexual act. Defense counsel cannot be deemed ineffective for advising his client not to take the stand and confess to a felony.

Ex. O, p. 137.

Petitioner has not shown prejudice to the outcome. Had he testified, Petitioner would have admitted that he attempted to have sex with A.C. but was interrupted. This would have been very damaging in his defense since the jury then would only have to determine whether to believe A.C. as to whether sexual intercourse actually occurred. Even if she told Petitioner she was 14 years of age, ignorance of the age of the child under age 16 is no defense to sexual offenses against that child. FLA. STAT. § 794.021.[14] *See* Hodge v. State, 866 So. 2d 1270, 1273 (Fla. 4th DCA 2004) and cases cited.

---

[14] That statute provides: "When, in this chapter, the criminality of conduct depends upon A.C.'s being below a certain specified age, ignorance of the age is no defense. Neither shall misrepresentation of age by such person nor a bona fide belief that such person is over the specified age be a defense."

The state Rule 3.850 court did not address the additional claim, that Defendant's testimony would have undermined the testimony of Dick.  But with regard to his other claims based on Dick's deposition statement that she had been robbed by Petitioner, addressed ahead as Grounds Three, Four, and Five, the court found he Petitioner "completely ignores" the portion of her testimony that Petitioner had apologized to her after the robbery and they were "tight friends ever since."  *Id.*, p. 135, referencing the deposition (quoted above).  The court found he "failed to demonstrate and the record is void of any perjured testimony by Janey Dick or any grounds for impeachment of her testimony."  *Id.*

Petitioner has not shown that this factual determination is clearly erroneous.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Aside from Petitioner's own assertion that he never apologized to Ms. Dick for robbing her,[15] there is no showing that Ms. Dick harbored any animosity toward him in 2000 for the 1996 robbery.  Moreover, even if Ms. Dick remained upset that Petitioner committed a robbery against her in 1996, it would have been incredibly damaging for Petitioner to tell the jury that he robbed Ms. Dick in 1996, or that he had never apologized to Ms. Dick for robbing her.  For all of these reasons, Petitioner has not shown that the state court's adjudication of the merits of this federal claim "resulted in a decision that was contrary to, or involved an unreasonable

---

[15] With respect to ground three, Petitioner stated: "Charleston strongly avers that he never apologized to Ms. Dick for robbing her" and denies that he and she became friends.  Doc. 41, p. 11.

application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Three**

Petitioner contends that the prosecutor knowingly elicited false testimony from Ms. Dick when she testified that she and Petitioner were friends, and that she held no animosity toward him for the 1996 robbery. Doc. 41, p. 5. Petitioner asserts that Ms. Dick "repeatedly went to the police office to request an investigation into the alleged sexual abuse based on the hearsay of Dawoo Shannon. This demonstrates Mrs. Dick's dire want to get Charleston in trouble and shows a motive." *Id.*, p. 13. Petitioner also reasons that Ms. Dick had a motive to influence her daughter to accuse him falsely. *Id.*

The Government's knowing use of false testimony violates due process. Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), citing Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935), Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942), and Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

> In order to prevail on a *Giglio* claim, a petitioner must establish that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony," and that the falsehood was material. *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir.1995). For *Giglio* purposes, "the falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)(emphasis added)).

Tomkins v. State, 193 F.3d 1327, 1339 (11th Cir. 1999), *cert. denied*, 531 U.S. 861 (2000).

Respondent makes a complicated argument for the proposition that Petitioner's Rule 3.850 claim is not the same as this claim and thus is procedurally defaulted. Doc. 42, pp. 32-40. Respondent may be right, but it is much easier to go to the merits. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).[16]

The trial court found that Petitioner failed to show that Ms. Dick committed perjury. Ex. O, p. 135. As noted earlier, Petitioner has not shown this factual finding to be clearly erroneous. That is the end of this claim. And as noted above, it would have been a seriously damaging strategy had defense counsel tried to impeach Ms. Dick based on the 1996 robbery. Petitioner has not shown the state court's adjudication of the merits of this federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Four**

Petitioner contends his attorney was ineffective for failing to demonstrate that Ms. Dick's testimony was perjured. Doc. 41, p. 5. He argues that his attorney should have placed in evidence the fact that he had been convicted of robbing Ms. Dick in 1996. *Id.*,

---

[16] Procedural default is irrelevant where, as here, a federal claim is not presented. Engle v. Isaac, 456 U.S. 107, 121, n. 19, 102 S.Ct. 1558, 1568, n. 19, 71 L.Ed.2d 783 (1982) ("[w]e agree [with the State] that the claim is insufficient to support habeas relief, but do not categorize this insufficiency as a lack of prejudice. If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts.").

at pp. 15-16.  For the reasons set forth above, Petitioner has not shown that the state court's adjudication of the merits of this federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Five**

Petitioner contends that his attorney was ineffective for failing to impeach Ms. Dick with her inconsistent statements.  Doc. 41, p. 16.  He argues that his attorney should have impeached her with her deposition testimony, which he asserts here and elsewhere to have been inconsistent.  The claim fails for the reasons set forth above. Petitioner has not shown that the state court's adjudication of the merits of this federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Six**

Petitioner contends that his attorney was ineffective for failing to seek dismissal of the charges based on violation of the state speedy trial rule.  Doc. 41, p. 18. Petitioner claims he was arrested on February 23, 2000, and in pretrial confinement.  *Id.* He alleges that on January 16, 2001, more than 175 days later, he filed a pro se motion demanding a speedy trial, dismissal of the charges, and release from custody.  *Id.*  He asserts that he was entitled to discharge 15 days later.  *Id.*, p. 19.  Petitioner alleges that his attorney was appointed to represent him on June 18, 2001, and should have immediately filed a motion for discharge for violation of the state law speedy trial rule.

*Id.*, p. 18.  He assets that counsel did not, but instead moved for a continuance on July 5, 2001.  *Id.*

Respondent agrees that this claim was presented to the state court as claim 2F in the Rule 3.850 motion.  Doc. 42, p. 54.  The state court rejected this claim without a hearing, finding:  "The Motion for Continuance by the defense and the order relating thereto, along with the docket printout, clearly reveals that no valid basis existed for the Motion to Discharge."  Ex. O, p. 137.

Respondent first suggests that the state court denied this claim as a matter of state law, and violations of state law do not state a claim for federal habeas relief.  Doc. 42, p. 55, *citing* Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989).  Certainly that is true, but serious attorney error as to a state law claim that prejudices the outcome is a Sixth Amendment violation.  This argument is unpersuasive.

Respondent next argues that the state court's interpretation of state law is binding on this court.  That also is true in a general sense.  "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.' "  Herring v. Secretary, Dept. of Corrections, 397 F.3d 1338, 1355 (11th Cir.), *cert. denied*, 546 U.S. 928 (2005), *quoting*, Agan v. Vaughn, 119 F.3d 1538, 1554-55 (11th Cir.1997) (citations omitted); Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005), *cert. denied*, 549 U.S. 952 (2006).[17]

---

[17] In Herring and Callahan, claim of ineffectiveness were based on failure to object to the admission of certain evidence at trial.  Since the state court had already ruled as a matter of state law that the evidentiary objection would have been properly overruled, that binding determination of state law meant there could not be attorney error or prejudice for failing to argue the objection.

The Florida speedy trial rule provides for a speedy trial "without demand" and "upon demand." FLA. R. CR. P. 3.191(a) and (b). Subdivision (p) of the rule provides remedies for failing to try a defendant within the specified time. Subdivision (i) provides in part that the speedy trial time may be extended by order of the court upon good cause shown by the accused or upon motion of the accused "in exceptional circumstances." Subdivision (k) in part defines unavailability of the accused for trial if "the person or counsel is not ready for trial on the date trial is scheduled."

As explained by the Florida Supreme Court:

> To summarize the various applicable subdivisions of the rule: when the 175-day speedy trial period expires, the defendant is not automatically entitled to a discharge. Rather, the defendant may then invoke the rule by filing a notice of expiration of the speedy trial time. At that point, the court must hold a hearing within five days and then schedule a trial within ten days. If a trial is not held during that period, the defendant must be discharged unless one of the circumstances in subdivision (j) applies. One of those circumstances is the defendant's unavailability. Unavailability includes circumstances where either the defendant or defense counsel is not ready for trial on the date it is scheduled.

State v. Naveira, 873 So. 2d 300, 306 (Fla. 2004). Thus, a motion for a continuance to prepare for trial waives the state law speedy trial right. *Id.*, at 307.

Respondent asserts that Petitioner was represented by counsel when he filed his pro se "Notice of Expiration of Speedy Trial Time," and thus the notice was a nullity. This is correct. Petitioner was represented by counsel at the time he filed the notice. The public defender was appointed for Petitioner on February 25, 2000. Ex. O, p. 164 (docket sheet). James Webb, Esq., was assigned on March 14, 2000. *Id.* Stewart Parsons replaced Webb on August 14, 2000. *Id.* Stephen Seliger replaced Parsons on December 11, 2000. *Id.*, p. 166. John Kenny replaced Seliger on January 9, 2001. *Id.*

Lynn Thompson replaced Kenny on June 18, 2001.  Thompson filed a motion to

continue on July 5, 2001.  *Id.* and Ex. B.  A pro se demand for a speedy trial by a

defendant who has not been permitted to represent himself and is represented by

counsel, is ineffective.   Burke v. State, 732 So. 2d 1194 (Fla 4th DCA 1999); Booker v.

State, 807 So. 2d 800 (Fla. 1st DCA 2002).  There is no evidence that Petitioner was

permitted to represent himself during this period pursuant to Faretta v. California, 422

U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) and Jones v. State, 449 So. 2d 253,

257 (Fla.), *cert. denied*, 469 U.S. 893 (1984).

Further, the July 5, 2001, motion to continue waived Petitioner's right to a speedy

trial under Florida law.  This was the implicit basis for the Rule 3.850 court's

determination that there was no valid basis for a motion for discharge.

Blind acceptance of that ruling as dispositive of the Strickland claim, simply

because it was a ruling as to the underlying state law claim, would not be proper here.

Filing a motion to continue and waiving the state law speedy trial right, under

circumstances not present here, could conceivably constitute ineffective assistance of

counsel.

But to get to that issue, Petitioner would have to plead much more than the loss

of the state law right.  Counsel's decisions, under Strickland, are presumed to be made

to advance reasonable trial strategy.  466 U.S. at 690, 104 S.Ct. at 2066.

> The presumption [in favor of competence] impacts on the burden of proof
> and continues throughout the case, not dropping out just because some
> conflicting evidence is introduced.  "Counsel's competence . . . is
> presumed, and the [petitioner] must rebut this presumption by *proving* that
> his attorney's representation was unreasonable under prevailing
> professional norms and that the challenged action was not sound
> strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2588,

91 L.Ed.2d 305 (1986) (emphasis added) (citations omitted).  An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption.  Therefore, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Williams*, 185 F.3d at 1228; *see also Waters*, 46 F.3d at 1516 (en banc) (noting that even though testimony at habeas evidentiary hearing was ambiguous, acts at trial indicate that counsel exercised sound professional judgment).

Chandler v. United States, 218 F.3d 1305, 1315, n. 15 (11th Cir.2000) (*en banc*), *cert. denied*, 531 U.S. 1204 (2001).  "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." *Id.* at 1316 (footnote and citations omitted).

Under Florida law, counsel may waive the Florida time limits even against his client's wishes.  Randall v. State, 938 So. 2d 542, 544 (Fla. 1st DCA 2006) (collecting cases).  *See also*, Taylor v. State, 557 So. 2d 138, 141-142 (Fla. 1st DCA 1990) (noting tension between right to speedy trial under state statute and constitutional right to competent, prepared counsel; finding no violation of the constitutional right to speedy trial where counsel sought a continuance over defendant's objections), *overruled on other grounds;*[18] and Jones v. State, 449 So. 2d at 262 (defendant may not control the docket by making spurious demands for a speedy trial he is not prepared for, citations omitted).

---

[18] Taylor was disapproved to the extent inconsistent with the opinion in Heuss v. State, 687 So. 2d 823 (Fla. 1996) (holding that state's failure to argue harmless error does not preclude appellate court from considering it).

Petitioner has not shown that any of his attorneys were ready for trial until the trial actually occurred.  Thus, he has not rebutted the presumption that the failure of counsel to ask for a trial sooner was not good trial strategy.

Further, Petitioner has not shown that had any one of his attorneys filed a "Notice of Expiration of Speedy Trial Time," either the State would have been unprepared to go to trial in the 10 days after setting trial, or that his attorney would have been prepared.  Assuming such a Notice would have prompted an earlier trial, Petitioner has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

For all of these reasons, Petitioner has not shown that the state court's adjudication of the merits of this federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Seven**

Petitioner contends that he was denied effective assistance of appellate counsel due to a conflict of interest.  Doc. 41, p. 22.  He asserts that at the beginning of his case, the Public Defender certified that that office had a conflict and sought representation by an attorney outside of the Public Defender's office.  Id.  The Public Defender filed a motion asserting conflict of interest on August 11, 2000.  Ex. O, p. 164; Ex. II.  Petitioner asserts that the conflict arose because attorneys from the Public Defender's office previously represented prosecution witnesses Dick and Shannon.  Doc. 41, p. 22.  Petitioner asserts that on direct appeal, an attorney on the staff of the Public Defender represented him, and since the conflict still existed, he was deprived of

effective assistance of appellate counsel. *Id.* Respondent agrees that Petitioner

exhausted his state court remedies as to this claim. Doc. 42, p. 59. The First District

Court of Appeal denied the claim on the merits without an opinion. Ex. GG.

Respondent makes an argument that Petitioner waived his right to conflict free

counsel, doc. 42, pp. 60-64. The gist of the argument is that Petitioner knew that James

Webb and Jamie Spivey were appointed to represent him on appeal and knew that both

were employed in the Public Defender's office. *Id.* It is easier here to address the

merits of the claim than to decide this waiver argument.

There is a limited presumption of prejudice where counsel has an actual conflict

of interest. Strickland, 466 us at 691, 104 S.Ct. at 2067, *citing* Cuyler v. Sullivan, 446

U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). There is a presumption requiring

automatic reversal only where an attorney is forced to represent codefendants over his

own objection, unless the court has found no conflict. Mickens v. Taylor, 535 U.S. 162,

167-168, 122 S.Ct. 1237, 1241-42, 152 L.Ed.2d 291 (2002), *discussing* Holloway v.

Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

As established in Sullivan, "a defendant who shows that a conflict of interest

*actually affected the adequacy of his representation* need not demonstrate prejudice in

order to obtain relief." Mickens v. Taylor, 535 U.S. 162, 168, 170, 122 S.Ct. 1237,

1242, 1243, 152 L.Ed.2d 291 (2002) (*quoting* Cuyler with added emphasis). The

Mickens Court noted that while the Courts of Appeals had "unblinkingly" applied Sullivan

to all kinds of purported ethical conflicts:

> [T]he language of *Sullivan* itself does not clearly establish, or indeed even
> support, such expansive application. "[U]ntil," it said, "a defendant shows
> that his counsel *actively represented* conflicting interests, he has not

established the constitutional predicate for his claim of ineffective assistance."

Mickens, 535 U.S. at 175, 122 S.Ct. at 1245 (*quoting* Sullivan with added emphasis, other citations omitted). To demonstrate an *actual* conflict, Defendant must make a factual showing of inconsistent interests or point to specific instances in the record suggesting a conflict. Quince v. Crosby, 360 F.3d 1259, 1264 (11th Cir.), *cert. denied*, 125 S.Ct. 436 (2004) (citations omitted). To demonstrate an adverse effect he must show that counsel failed to pursue a reasonable alternative strategy because it conflicted with counsel's other alleged loyalties. *Id.*, at 1264-65 (citations omitted).

Petitioner here has not shown that his appellate counsel *actively* represented conflicting interests. Petitioner has not shown that anyone in the Public Defender's office actively represented either Dick or Shannon when his attorney handled his direct appeal. He has also not shown that his appellate attorney failed to pursue a reasonable appellate strategy because of any conflict with counsel's other active loyalties. He argues that appellate counsel failed to raise Grounds Eight and Nine herein, but as will be seen in the discussion ahead, there is nothing in those claims that suggests conflict with the interests of either Dick or Shannon.

Further, to the extent that the state court ruling rejecting this claim was based upon a belief that prejudice to the outcome cannot be presumed outside of a case of multiple concurrent representation, that conclusion cannot be said to have been contrary to federal law as established by the Supreme Court:

> In light of *Mickens*, we have held that "a decision that *Sullivan*'s limited presumption of prejudice does not apply [outside the context of multiple concurrent representation] is not 'contrary to, or an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court.'  Nor is a failure to extend the Sullivan rule to [a] new
context unreasonable either."  *Schwab v. Crosby*, 451 F.3d 1308, 1327
(11th Cir.2006) (internal citations omitted).

Hand v. Secretary, Dept. of Corrections, 305 Fed.Appx. 547, 550 (11th Cir. 2008) (not

selected for publication in the Federal Reporter, No. 07-15122), *pet. for certiorari filed*,

Hand v. Mcneil, __ S.Ct. __ (October. 5, 2009) (No. 08-10928).

Consequently, Petitioner has not shown that the state court's adjudication of the

merits of this federal claim "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  § 2254(d)(1).

**Ground Eight**

Petitioner contends that his appellate counsel was ineffective for failing to argue

"fundamental error" arising from the prosecutor's alleged misconduct during closing

argument.  Doc. 41, p. 24.  Petitioner implicitly acknowledges that the error was not

preserved at trial by a contemporaneous objection.  *Id.*  Respondent concedes

exhaustion of state court remedies since the claim was rejected on the merits without

opinion.  Doc. 42, p. 68.

Ineffective assistance of appellate counsel claims are analyzed under the test

enunciated in Strickland v. Washington.  Grubbs v. Singletary, 120 F.3d 1174, 1176

(11th Cir. 1997); Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*,

502 U.S. 1077 (1992).  With regard to attorney error, appellate counsel need not raise

every nonfrivolous issue.  Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d

987 (1983).  "Experienced advocates since time beyond memory have emphasized the

importance of winnowing out weaker arguments on appeal and focusing on one central

issue if possible, or at most on a few key issues."  463 U.S. at 751-752, 103 S.Ct. at 3313.  The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (quoting Barnes).  "Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent.  *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ('Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome')."  Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000).  *See also* Bundy v. Dugger, 850 F.2d 1402, 1411 (11th Cir. 1988), *cert. denied,* 488 U.S. 1034 (1989) (discussing Strickland, and Barnes).

To determine prejudice, the court reviews the merits of the omitted or poorly presented claim, and will find prejudice only where the claim would have a reasonable probability of success on appeal.  Heath v. Jones, 941 F.2d at 1136.

In Florida, a claim concerning improper closing argument must be preserved by objection at trial and a motion for a mistrial.  Cole v. State, 866 So. 2d 761, 763 (Fla. 1st DCA 2004).  The failure to make a contemporaneous objection waives any claim on appeal unless the closing arguments caused fundamental error.  Morton v. State, 789 So. 2d 324, 329 (Fla. 2001).  "Fundamental error" is ""error that reaches down into the validity of the trial itself to the extent that a verdict of guilty . . . could not have been obtained without the assistance of the alleged error."  *Id.*, (citations and quotation marks omitted).

The purpose of closing argument under Florida law is to argue from the evidence:

> The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence. Conversely, it must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.

Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985); Dessaure v. State, 891 So. 2d 455, 468 (Fla. 2004). "Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment." Mann v. State, 603 So. 2d 1141, 1143 (Fla. 1992).

Argument also may be made as to questions of credibility from the trial evidence, including credibility as revealed by the demeanor of a witness. Watkins v. Sims, 81 Fla. 730, 741, 88 So. 764, 767 (Fla. 1921). The prosecutor may even argue that a witness "lied" if that characterization is based upon trial evidence. State v. Comesana, 904 So. 2d 462, 463-464 (Fla. 3d DCA 2005).

> Both the prosecutor and defense counsel are granted wide latitude in closing argument. *See Ford v. State*, 802 So. 2d 1121, 1129 (Fla.2001). No area is more deserving of "wide latitude" than the defendant's ability in a criminal case to argue the "credibility and biases of the witnesses who testified at trial." *Goodrich v. State*, 854 So. 2d 663, 665 (Fla. 3d DCA 2003).

Williams v. State, 912 So. 2d 66, 68 (Fla. 4th DCA 2005). *See, e.g.,* Lowe v. State, 2 So. 3d 21, 43 (Fla. 2008) (arguing that a witness was "doing the best he can to recollect the truth," after summarizing his testimony, was argument to explain that the witness did not precisely remember everything and not improper); Williamson v. State, 994 So.2d 1000, 1013 (Fla. Oct 08, 2008) (arguments pointing to evidence tending to show that

the witness was credible, in rebuttal to defense argument that the witness was not credible, were proper).

The first instance of alleged improper argument is that the prosecutor said that there were certain facts "we do know that are undisputed." Doc. 41, p. 25. The second is that the prosecutor again said "we know a few things." *Id.* Petitioner contends that he use of the phrase "we know" was improper vouching. Improper vouching occurs when the State "places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony." Hutchinson v. State, 882 So.2d 943, 953 (Fla. 2004).

To put these comments in context, at trial Shannon said that he had been drinking all day, that he and Petitioner "joke about females coming past on bicycles [obviously children], so I say I had one, then he say he had one. But we joking about it and as we kept walking, they kept going past," and then he said he told Dick that "[A.C.] had some good cat," meaning "good pussy, I guess." Ex. C, p. 43. Shannon again said "we just joking about stuff . . . ." *Id.*

The first use of "we know" occurred when the prosecutor was summarizing evidence, that Dick went to law enforcement after Shannon reported to her what Petitioner had said. Ex. C, p. 147. The prosecutor argued that if Shannon had said *then* that Petitioner was joking, Dick's reaction would have been different. Later, he used "we know a few things" to list other evidence, that "something was said" by Shannon, that Dick did something (went to the police), and argued that the "spin" Shannon gave the jury "wasn't what he said back in January." *Id.*, p. 148.

None of this was improper vouching.  It is simply the adoption of a conversational tone for reviewing the evidence with the jurors:

> [T]he prosecutor adopted a conversational tone for reviewing the evidence with the jurors by saying "we saw" and "we heard" various evidence.  In light of this style, we think it would be obvious to any reasonable juror that the prosecutor's statement that "we know through other testimony the story is a lie" was merely the state's interpretation of the evidence presented at trial.

State v. Lewis, 543 So. 2d 760, 768 (Fla. 2d DCA 1989).[19]

The third, fourth, fifth, sixth, seventh, and eighth assertions of improper argument all concerned the credibility of A.C..  Ex. 41, pp. 27-30.  The prosecutor argued that A.C. had "no axe to grind" or any reason to lie about the fact that Petitioner had sex with her. Ex. C, p. 149.  He argued:

> You can accept or reject the testimony of any witness.  Obviously, if you reject the testimony of [A.C.], well, then your verdict should be not guilty. . . .  But I would ask, before you do that, that you fairly consider what she has to say and think about the whole situation, how it all came about, and then why would she say this?  That's a – There has been nothing ever presented along those lines.

Id., p. 150.  He argued that "no matter what they can jab at [A.C.] with this and that, was consistent on one thing, there was no wavering or vacillating about one thing.  This man had sex with [her]."  Ex. C, pp. 155-156.  "There was absolutely nothing presented as to why she would lie about all this."  Ex. C, p. 156.  The prosecutor argued that if A.C. had wanted to lie, she would have told "the big lie," and would have claimed that Petitioner raped her, but "there's no evidence as to why she should lie, and there's no big lie.  And

---

[19] This is not like the prosecutor's comment in Ruiz v. State, 743 So. 2d 1 (Fla. 1999), where the prosecutor implied that he would not have prosecuted the defendant unless he were guilty.

on the critical point, she's consistent all the way." *Id*. In rebuttal, the prosecutor again argued that this "is not a situation where she's a willing witness in the sense of 'I want to come in here and put the hammer to Derrick Charleston,'" that "if she was making up a lie . . . I submit you would have heard the big lie." Ex. C, p. 175.

Petitioner argues that the references to a lack of evidence to show that A.C. was lying is a comment on his right to remain silent since he was the only other witness to the offense. Doc. 41, p. 29. The prosecutor's arguments, however, were directed at the evidence of record, and the lack thereof, not to Petitioner's decision not to testify. Many kinds of evidence might have been presented to challenge A.C.'s credibility other than testimony from Petitioner. This was not a comment on Petitioner's decision not to testify. Arguing that there was "absolutely nothing presented as to why she would lie about all this," was a fair comment on the state of the evidence.

Petitioner also argues that it was improper to "poison the jury's mind with the concept" that if A.C. intended to lie, she would have told a "big lie." Doc. 41, p. 30. Petitioner asserts that this was improper bolstering of the credibility of A.C. with evidence from outside the record. *Id*. He argues that the prosecutor "made himself an expert witness" by offering this argument. *Id.*, p. 31. But the prosecutor did not refer to evidence outside the record, he was properly arguing from reasonable inferences that a juror might make from the evidence, which is fully within the bounds of proper argument. Bertolotti v. State, 476 So. 2d at 134.[20]

---

[20] This is not a case like Servis v. State, 855 So. 2d 1190 (Fla. 5th DCA 2003), where the prosecutor repeatedly claimed that his witnesses, including police officers, had no interest in how the case was decided. Here, the prosecutor only asked the jury to decide for themselves from the evidence whether A.C., Dick, and Shannon had a

The ninth assertion of improper argument again refers to rebuttal argument.

Doc. 41, p. 31.  The prosecutor said:

> The one thing the defense has not even presented to you in *argument* is why.  And that's the question.  I submit that you have to answer if you're going to reject the testimony of [A.C.].  Why?  Why would she falsely accuse this individual?

Ex. C, p. 174 (emphasis added).  Petitioner contends that "this comment can be characterized as attacking defense counsel, and shifting the burden of proof to Petitioner to prove his [innocence]."  Doc. 41, p. 31.  He argues that this "suggested to the jury that defense counsel failed to present to the jury why [A.C.] would lie."  *Id.*  This is not persuasive.

Petitioner's attorney addressed the evidence in his argument.  Ex. C, pp. 157-168.  The prosecution argument challenged here was in rebuttal, directed toward defense counsel's closing argument. [21]  The prosecutor's argument did not suggest that Petitioner had the burden of proof.

The tenth instance of alleged improper argument is that the prosecutor suggested that someone in Petitioner's family had threatened A.C..  Doc. 41, p. 32.  He did not.  He merely pointed out that A.C., a child, lived in Gretna, a small community, "surrounded by the defendant's people."  Ex. C, p. 149.  That is a reasonable comment on the potential cause of the reluctance of a child witness.  Indeed, Petitioner's counsel employed a form of this argument.  He argued that A.C. knew "what the word is out on

reason to lie.

[21] This is not at all like the personal attack against the defense counsel in Caraballo v. State, 762 So. 2d 542 (Fla. 5th DCA 2000).

the street and she's got to say something [when she is taken to the police station], so she makes a statement." *Id.*, p. 166. Both are proper arguments about the possible social dynamics of a small town.

The eleventh alleged instance of improper argument criticizes the prosecutor for arguing that Shannon had no "love for the State of Florida." Doc. 41, p. 33. The prosecutor argued that "the way the witnesses presented themselves is something that is a factor for you to consider . . . you know, you draw your own conclusions about it." Ex. C, p. 146. He argued that Shannon came across as a reluctant witness. *Id.* He argued that neither A.C. nor Shannon seemed to have "an axe to grind." *Id.* Then he pointed out that Shannon had "no love for the State of Florida" because had been sent to prison in July, and he was "not somebody coming in here that's going to be a big buddy with the State at all." *Id.* Petitioner argues that the fact that Shannon had no love for Florida because he was sent to prison had no factual support in the record. Doc. 41, p. 34. Yet Shannon revealed he had been sent to the Department of Corrections in July, and admitted he had four or five prior felony convictions. Ex. C, pp. 17-18. That he would not "love" or want to help the State of Florida was fair comment on the evidence.

The twelfth argument challenges another part of rebuttal. In this passage, the prosecutor noted that the court would instruct on how to judge the credibility of a witness, that the interest of the witness in how the case should be decided should be examined. Ex. 41, p. 34. The prosecutor accurately argued that one factor in determining the credibility of a witness would be whether the witness had some interest in how the case should be decided, and then asked the jury what interest A.C., her

mother, or Shannon would have had to make a false accusation against Petitioner.  Ex. C, p. 171.

Petitioner argues that this jury instruction focuses upon interest at the time of trial, not at the time of the offense or shortly thereafter, when the offense was reported. Doc. 41, p. 35.  He argues that focusing upon the interest of the witness at the time of the offense unfairly attempts to bolster the credibility of the witness.  *Id.*  This argument is simply wrong.  The interest in a witness to distort the truth is potentially an issue in every trial, whether in pretrial statements or at trial.  *See* Ex. C, pp. 180-181 (jury instructions, advising some things to be considered in determining the reliability of a witness).

In summary, none of these arguments presented a viable appellate claim. Nothing in this constituted error, much less fundamental error.  Neither attorney error nor prejudice to the outcome for failing to make these arguments has been shown. Consequently, Petitioner has not shown that the state court's adjudication of the merits of ground eight "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Nine**

Petitioner contends his appellate attorney was ineffective for failing to raise on appeal the admissibility of Dr. Moorer's expert opinion. Doc. 41, p. 40. Respondent concedes exhaustion of state court remedies as to this claim. Doc. 42, p. 81.

Dr. Moorer, a pediatrician, testified at trial that he performed a vaginal examination of A.C., could find "no scarring," and "could neither confirm or refute the possibility that she had been sexually penetrated." Ex. C, pp. 110-111. He had said earlier that "we've learned . . . that a substantial number of girls who have been sexually penetrated have no physical abnormalities whatsoever." *Id.*, p. 105. He also said that "dozens and dozens and dozens" of studies have reached the conclusion that in 40 to 60% of the cases, sexual penetration can occur without leaving physical traces. *Id.*, p. 107. He said that:

> what is surprising is the business that you can have sexual penetration and not have any physical findings whatsoever. There was a Review article published, gee, it's got to be at least 10 years ago now, that reviewed all of the literature of physical examination of the hymen and vagina in girls who had been sexually penetrated, and the title of article was, "It's normal to be normal." That is, it's normal to have normal findings even with sexual penetration. The numbers that are quoted are at least 50 percent of girls who have had sexual penetration have no physical findings at the time of the exam.
>
> Now, if you examine them much closer in time to the incident, say within 72 or 48 hours, or probably even 24 hours, you may be likely to find tiny trace evidence, little tiny microlacerations, but those heal very, very rapidly and will disappear in a matter of a couple of days.

*Id.*, p. 106. He said that "what we're now is the process of looking at the rapid injuries and how quickly and how completely do they heal." *Id.*, p. 107. He said that "most of

us have been astonished as how really dramatically quick and complete the healing can be." *Id.* He repeated that healing occurs "[v]ery rapidly." *Id.*

Petitioner argues that the opinion that healing was very rapid was inadmissible because the trial court did not find that this opinion was generally accepted in the community, a necessary element pursuant to Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). "The *Frye* test requires that the scientific principles or methodologies to which an expert testifies must be generally accepted in the scientific community before they will be considered valid in the courts." Butler v. State, 842 So.2d 817, 828 (Fla. 2003); Ramirez v. State, 651 So.2d 1164, 1167 (Fla. 1995).

Petitioner's trial attorney filed a motion *in limine* to exclude Moorer's opinion. He specifically objected to admission of the opinion that physical traces would not be expected following sexual penetration of "a girl of such advanced maturation." Ex. C, p. 4. He argued "that that opinion is in the realm of ongoing study for purposes of the *Frye* case and it is not a matter that's well-settled in the scientific community." *Id.* He pointed out that in deposition Dr. Moorer said it was only in the last several years that anyone had done sequential studies of sexually abused children to record the healing process, and the studies showing "a remarkable amount of healing" going on were only preliminary. *Id.*, pp. 4-5

The trial court pointed out that this argument did not address the *Frye* issue, which is whether the preliminary studies followed generally accepted scientific principles. Ex. C, p. 17. The court said that "you have to look at the principles applied." *Id.* He noted that "the fact that there are articles out there that are published suggests it has gained some acceptance, *at least the principles that apply*." *Id.* (emphasis added).

He noted that Dr. Moorer could readily acknowledge that these are only preliminary results, but his opinion was also based upon his own experience. *Id.* "A doctor is one of those experts that can say: Well, we're finding this." *Id.* The court concluded that Dr. Moorer's opinion was "based on sufficient scientifically reliable studies" and denied the motion. *Id.*, p. 18.

This ruling was correct. It seems without question here that physicians conducted these "preliminary" studies by physically examining sexually abused children for injuries. They did not do this with novel or untested scientific instruments. They used their own eyes and perhaps had assistance from magnification. They made these observations over time and recorded the data. This scientific technique is not novel. Scientists have been making visual observations and recording findings for hundreds of years. As the trial court said, that these studies were preliminary was not a factor precluding admissibility, especially since Dr. Moorer would partially base his opinion upon his own experience. Therefore, there was no appellate claim here. Thus, Petitioner has not shown that the state court's adjudication of the merits of ground nine has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Conclusion**

For the reasons set forth above, it is respectfully **RECOMMENDED** that the 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Derrick Charleston, challenging his conviction and sentence for sexual battery on a child under the age of twelve,

imposed in the Second Judicial Circuit, Gadsden County, case number 00-128CFA, be

**DENIED WITH PREJUDICE**.

IN CHAMBERS at Tallahassee, Florida, on October 8, 2009.


s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.